ADAM FLANDERS
24292 Timothy Drive
Dana Point, CA 92629
(207) 323-0241
adamsunny@me.com

Self-Represented

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ADAM FLANDERS,<br><br>　　　　　Petitioner/Plaintiff,<br><br>　v.<br><br>ATHENAHEALTH, INC.,<br><br>　　　　　Respondent/Defendant | Case No.:<br><br>COMPLAINT FOR DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND TITLE VII OF THE CIVIL RIGHTS ACT, BREACH OF CONTRACT, AND PROMISSORY ESTOPPEL |

**NATURE OF THE ACTION**

1. This is an action to seek redress for unlawful discrimination on the basis of Disability and Sexual Orientation pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Breach of Employment Contract and Employer Promise (Promissory Estoppel), 28 U.S. Code § 1332. Athenahealth, Inc. ("Athenahealth") and its employees failed to accommodate me and knowingly discriminated against me based on my mental disabilities. My immediate supervisor admitted to making sexually explicit jokes targeting my sexual orientation. Athenahealth failed to honor an employment contract made for the purpose of accommodating my disabilities.

2. The Americans with Disabilities Act requires employers to provide employees with disabilities access to the same employment opportunities and benefits available to

employees without disabilities. Employers must provide reasonable accommodations to qualified employees. Likewise Title VII of the Civil Rights Act prohibits employers from discriminating against employees based on sexual orientation.

3. I informed Athenahealth management and Human Resources, both verbally and in writing, of my mental health issues and requested specific accommodations. Athenahealth stated it would attempt to provide at least some of the requested accommodations but failed to make *any* accommodations and in fact exacerbated my condition, forcing my resignation.

4. Athenahealth admitted to making errors in my employment status which for over a year granted me pay and benefits beyond what I should have received based on my title and status. Athenahealth thus made a promise that I would continue to receive such pay and benefits without requiring changes to my employment status. Upon discovery of its error, Athenahealth violated its promise by requiring me to enter into a written contract that reduced my pay and benefits and exacerbated my mental health conditions. Athenahealth then violated that written contract as well.

## PARTIES

5. I, Adam Flanders, Plaintiff, am an adult resident of the United States. At all times relevant to this Complaint, I was a resident of Maine and I had major depression, anxiety disorder, and seasonal affective disorder, all disabilities recognized under the Americans with Disabilities Act. I am now a resident of California.

6. Defendant Athenahealth, Inc. ("Athenahealth") is private company headquartered in Watertown, Massachusetts. At all times relevant to this Complaint, Athenahealth was a public company and my employment existed solely at their Belfast, Maine location. In November 2018 Athenahealth was acquired by Elliott Management and Veritas Capital, with which it merged. Athenahealth is an employer covered under the Americans with Disabilities Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue in this Court is proper under 28 U.S.C. §1391.

8. In March 2017 I timely filed complaints with the Maine Unemployment Insurance Commission ("UIC") and the Maine Human Rights Commission ("HRC"). The UIC determined that Athenahealth forced my resignation and that I resigned due to no fault of my own and that my resignation was the result of good cause attributable to employment. The UIC also found that Athenahealth failed to uphold its verbal agreements and written contracts with me and failed to accommodate my disabilities, placing me in a position that made continued employment impossible for me. The UIC found me eligible for unemployment compensation, which I was in fact paid.

9. The HRC's investigation found no reasonable grounds for discrimination and dismissed my complaint in April 2019. The HRC failed to consider or obtain my medical history, nor did it issue a finding regarding my Breach of Contract or Promissory Estoppel claims.

10. I requested review with the Equal Employment Opportunity Commission ("EEOC"), which adopted the HRC's findings and dismissed my complaint on April 25, 2019. The EEOC informed me that I have 90 days to file suit in U.S. District Court.

11. This Court has jurisdiction over Athenahealth which is located in Belfast, Maine and headquartered in Watertown, Massachusetts. The acts of discrimination occurred in Belfast, Maine.

## FACTUAL ALLEGATIONS

12. I was employed as a CSC Analyst at Athenahealth from September 2014 to March 2017. My responsibilities primarily included telephone support in a call center which supported clinicians in the use of Athenahealth software. I was granted three pay raises during my employment at Athenahealth and I was in good standing at all times. I was never accused of misconduct nor did I ever have any disciplinary issues.

13. After about one year as a general CSC Analyst I applied to and was transferred to the TIES Team, a specialty team within the CSC that handled customer support and technical troubleshooting related to specific products such as Epocrates and athenaText. I remained part of this team until my resignation on March 3, 2017.

14. I have suffered from depression and anxiety disorder since I was a teenager and I have received lifelong medical and psychological treatment as a result. At all times during my employment at Athenahealth, I was treated for several mental health disabilities including major depression, anxiety disorder, and seasonal affective disorder. This included inpatient and outpatient psychiatric treatment, counseling / therapy, medication, and regular meetings with my primary physician.

15. During my employment at Athenahealth I met in person with my primary provider at least fifteen (15) times. For more than half of those appointments, the primary "Reason for Visit" was depression or anxiety. At every appointment my providers requested updates on my mental health issues. *Every* care summary includes the fact that I was receiving continuing treatment for depression and anxiety: "Recurrent Major Depressive Episodes: Active. Anxiety State: Active."

16. In September 2015 I took a leave of absence due to my mental health issues. My doctor provided the following diagnosis: "Major depressive disorder, recurrent, severe without psychotic features." My doctor provided this information to Athenahealth and I was in fact granted disability leave. My doctor also informed Athenahealth that I was being treated with anti-depressant medication and psychological counseling. My doctor advised Athenahealth that I should continue a part-time work schedule of 32 hours per week.

17. I continued to suffer from and received continued treatment for my mental health issues throughout my employment at Athenahealth.

18. During my first year at Athenahealth when I worked as a general CSC Analyst, I had a single manager named Charles Nute. At one point I brought a light therapy box to work to help with my seasonal affective disorder. The box conspicuously said "Happy Light" on the front. My manager asked me what it was and I explained that it was to help with

seasonal affective disorder in the winter. He proceeded to make jokes about it, saying things like, "Ah, I'm blinded!" and "Can you get a tan with that thing?" It was brought to my attention that other employees had complained about the brightness of the light therapy box and that it was distracting because Athenahealth has an open office setup in which there are no cubicles or significant dividers between employees. I removed the light therapy box. Athenahealth later issued a company-wide ban on personal electronic devices.

19. I transferred to the TIES Team in Fall 2015. This team was led and supervised by Joseph Dunphy, the Team Lead. Joseph Dunphy was the primary contact for nearly all matters related to my employment, job responsibilities, requesting time off, and so on. I regularly met privately with him on a biweekly basis in order to discuss my career plans and duties at Athenahealth. Joseph Dunphy was authorized to and did in fact make decisions regarding my job responsibilities, my work schedule, and future career opportunities.

20. I had several managers during my employment as a TIES Team member, although I reported to them far less frequently than Joseph Dunphy. These managers included Justin Richards, Alison Butler, Christian Mahon, and Jessica Patrick. I was under the management of these individuals one at a time, in the order indicated, but Joseph Dunphy was my immediate supervisor at all times during my TIES Team role up until the day of my resignation.

21. During my entire employment as a TIES Team member I made numerous requests for accommodations based on my disabilities. This included reasonable accommodations such as continuing part-time work, which my doctor specifically advised, being moved to a desk closer to a window, transfers to teams whose job responsibilities were less anxiety-inducing, working from home, working remotely, or transfer to a warmer geographical location where Athenahealth had existing offices.

22. Athenahealth was in fact aware of my mental health disabilities no later than September 2015 when I took a leave of absence and my doctor provided Athenahealth with written notification of my disabilities. I also told Joseph Dunphy, managers, and Human

Resources about my mental health issues. These communications were made both verbally and in writing.

23. Months before my resignation I wrote emails to Joseph Dunphy, management, and Human Resources specifically citing my struggles with depression and anxiety and that I would need to resign if I did not receive an accommodation. I sent the following to Joseph Dunphy, HR, management, and senior management on December 28, 2016:

> *"I have wanted to leave Maine for some time now. I have struggled with depression that often becomes severe in the winter months due to the added impact of Seasonal Affective Disorder. I have had to miss work at athenahealth, including taking a temporary medical leave and short-term disability in Fall 2015, due to my depression. I don't believe I can do my best work in Maine and at this time there are no options available for me with athenahealth in Manila or San Francisco. I have discussed my decision with Joseph Dunphy and Christian Mahon, and Jessica Patrick has been informed. I have family in Southern California who have offered me help in moving. I think I will have a happier, healthier life there."*

24. During some of my private meetings with Joseph Dunphy during which I requested accommodations, he made sexually explicit remarks about my sexual orientation. Specifically he implied that the only reason I wanted to transfer to Athenahealth's Chennai, India office was so I could have sex with Indian men. He made jokes about the kinds of sexual acts I would perform with Indian men in explicit detail, referencing how they "all had moustaches." He made similarly explicit and racist jokes about my desire to transfer to Athenahealth's Manila, Philippines office. During the Maine HRC's investigation Joseph Dunphy admitted to making racist and graphic jokes about my sexual orientation, strangely introducing his own sexual preferences for Asian women. These statements, made in the context of my accommodation requests, made me extremely uncomfortable and directly affected my ability to perform my duties at Athenahealth. It also exacerbated my existing mental health issues and anxiety.

25. Following my disability leave, accommodation requests, and written statements to Joseph Dunphy, management, and Human Resources regarding my mental health issues, no meaningful effort was ever made to accommodate me.

26. Joseph Dunphy placed additional job responsibilities on me in anticipation that doing extra work would increase my odds of obtaining a transfer to a less stressful position at Athenahealth. Joseph Dunphy assured me I would get one of these positions if I took on extra work, including job duties that were in fact part of other teams such as Product Knowledge. Therefore Athenahealth gave me additional responsibilities with the promise that I would benefit by being transferred to a team that would be less stressful for me. Such a transfer never happened, nor did any other opportunity ever manifest. Prior to my resignation, Joseph Dunphy and management ultimately informed me that a transfer to another team such as CCP Device Tech or Product Knowledge, would not be an option.

27. Management made absolutely no effort to accommodate me and in fact made matters worse. In Fall 2016 Jessica Patrick discovered that, although I had been working as a part-time employee, I was being compensated and benefited as if I were a full-time employee. This had been going on for over a year. Jessica Patrick informed me that in order to maintain the same compensation and benefits I had received for over a year, I would be required to switch to a full-time position. This was counter to the specific advice of my doctor made in writing to Athenahealth. The alternative was to continue working part-time and see a reduction in my compensation and benefits. Jessica Patrick and Joseph Dunphy also told me that I would need to work full time as a condition to get transferred to another team. My existing compensation and benefits constituted an implied contract that existed for over a year. Athenahealth violated that contract.

28. I explained to both Jessica Patrick and Joseph Dunphy my need for a part-time schedule due to my mental health issues and that working full-time in the call center would exacerbate my anxiety too much. Joseph Dunphy then negotiated a written contract with me in which I would work full-time but the additional hours would include non-call work in order to reduce stress. Most of the new work consisted of project work for other teams

separate from the TIES Team such as CCP Device Tech, Product Knowledge, and MDP. Work for TIES Team was given the lowest priority in the contract. Doing work for other teams was given priority due to Joseph Dunphy's implied promise that such work would lead to a transfer to those teams.

29. The contract was not honored. The additional hours were spent almost entirely taking calls and customer service for the TIES Team. I was then expected to find time for the additional project work for other teams despite no increase in compensation for responsibilities far beyond that of other TIES Team employees. This drastically increased my stress and anxiety and made me feel overwhelmed.

30. Human Resources ("HR") made no effort to accommodate my requests, instead warning me in December 2016 that discussing my medical issues could result in adverse action. HR did not make any effort to find accommodations, nor did they ever reach out to my managers to discuss potential options. Deb Bartol of HR wrote the following, in part, to me when I emailed her and management about my struggles with depression and anxiety:

> *"I would steer away from oversharing your personal medical issues with anyone at the management level. These are things you should keep private and discuss with Matrix (our leave administrators) or with HR. I know sometimes we want to be like an open book and be transparent about what's going on in our lives; however, it's best to be selective with whom you share this personal information."*

In response to my unemployment application with the Maine UIC, Brittany York of HR wrote back to the UIC, in part:

> *"[Deb Bartol] advised [Adam] the typical avenue at athena for sharing medical information internally is speaking directly with HR. She coached him to be mindful with sharing sensitive medical information outside of HR, particularly given that he was planning to stay with the company for the foreseeable future."*

31. I interpreted Deb Bartol's statements, as any prudent person would, to mean that I would face adverse action, including termination, for discussing my mental health issues and requesting accommodations. Brittany York later confirmed this in her statement to the

Maine UIC. Jessica Patrick also told the Maine HRC that the only thing she recalled HR telling her was that Deb Bartol had advised me not to talk about my medical issues.

32. Athenahealth did not individually assess whether I was able to perform the essential functions of the job with reasonable accommodation.

33. Athenahealth did not offer any accommodations for my disabilities even when I identified over nine (9) possible options.

34. Athenahealth did not offer me any other positions or identify any other opportunities for me at Athenahealth.

35. Athenahealth deliberately and maliciously made matters worse with false promises, breached contracts, jokes about my disabilities and sexual orientation, a hostile work environment, and a general pattern of disregard for my welfare motivated by discrimination based on disability and sexual orientation.

36. I sought reasonable accommodations for my mental health disabilities and Athenahealth responded by retaliating, placing me in an impossible situation. Athenahealth forced my resignation based on my disabilities and sexual orientation. The Maine UIC wrote:

> *...[T]he Commission finds that the claimant left regular employment voluntarily with good cause attributable to the employment...*
>
> *...The claimant complained to management about this issue which was impacting his health and the employer made no meaningful effort to address the claimant's complaint. The claimant then renewed his request that the employer allow him to work remotely from home or be transferred to a different branch in a warmer climate, where seasonal affective disorder would not have as great an impact in winter months. When the employer declined to transfer the claimant or allow him to work remotely the claimant quit his employment. The Commission concludes that the employer's change to the claimant's work conditions constitutes a good cause reason for his leaving the employment. The claimant's reason for leaving was reasonable and the result of real pressure resulting from his changed job circumstance...*

> *...The Commission concludes that the illness exception applies under the unique circumstances of this case, where the employer's error necessitated a change in the claimant's schedule which negatively impacted the claimant's health. Following the employer's discovery of its error in payment of benefits the claimant was placed in a 'catch 22' situation. The claimant's medical conditions required that he work a shorter (four day) work-week to relieve stress but the claimant needed to work full time to earn the benefits he had been receiving and to obtain a transfer / promotion to another position which would be better for his medical condition. The employer knew that the claimant requested the opportunity to work remotely or transfer to an office in a warmer climate due to his medical conditions. Nevertheless, the employer did not transfer the claimant or allow him to work remotely. The claimant's leaving in this case was caused by his illness and the Commission concludes that the employer's error effectively removed as a viable option the possibility of a reduction in hours for the claimant to address his illness. The Commission deems that the claimant took all reasonable precautions to protect the claimant's employment status...*

## FIRST CLAIM FOR RELIEF

### Violation of the Americans with Disabilities Act

37. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

38. Because major depression, anxiety disorder, and seasonal affective disorder substantially limit at least one of my major life activities I am an individual with a disability under the ADA.

39. I was fully qualified to work in many of the roles at Athenahealth and I could perform all the essential functions of those positions. Where some roles required additional training, Athenahealth could have provided such training but chose not to. Indeed, the written contract with Joseph Dunphy and Jessica Patrick implied qualification to work for teams such as CCP Device Tech, Product Knowledge, MDP, and the TIES Team.
40. Athenahealth became aware of my disabilities no later than September 2015 when Athenahealth approved me for disability leave and received medical documentation describing my mental health issues. This included a statement from my doctor indicating my accommodation needs for a part-time work schedule.
41. In December 2016 I provided information about my depression, anxiety disorder, and seasonal affective disorder in writing to Athenahealth, including Joseph Dunphy, Human Resources, management, and senior management. I specifically told Human Resources that I would not resign if Athenahealth provided an accommodation.
42. Athenahealth is a covered employer to which the ADA applies.
43. Athenahealth failed to accommodate my disabilities and forced me to involuntarily resign based on those disabilities.
44. Athenahealth made no individualized assessment to determine whether I could perform the essential functions of the positions I requested as an accommodation, positions for which I was already doing work and being trained.
45. Athenahealth made no individualized assessment to determine whether a reasonable accommodation would enable me to continue my existing work or work in other positions, as is required under the ADA.
46. Athenahealth intimidated me to prevent me from making accommodation requests and discussing my disabilities.
47. When I made accommodation requests, Athenahealth retaliated by forcing me to change my work schedule and take on additional job responsibilities.
48. Athenahealth violated the ADA by requiring me to "prove myself worthy" of an accommodation such as a transfer to another team.

49. Athenahealth violated the ADA by forcing me to resign on the basis of my disability and failing to make an individualized assessment to determine whether I could be employed in other positions or whether a reasonable accommodation would enable me to continue my employment at Athenahealth.
50. As a result of Athenahealth's actions, I have suffered and will continue to suffer both economic and non-economic harm.

## SECOND CLAIM FOR RELIEF

**Violation of the Civil Rights Act – Discrimination Based on Sexual Orientation**

51. Title VII of the American Civil Rights Act of 1964, 42 U.S.C. § 2000e, prohibits employers from discriminating against employees based on sex. The EEOC and existing precedent have extended this definition to include sexual orientation. Title VII specifically prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment…or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee."
52. I am openly gay (homosexual) and Athenahealth was aware of my sexual orientation. My immediate supervisor Joseph Dunphy explicitly referenced my sexual orientation on several occasions in the context of my disability accommodation requests. During the Maine HRC's investigation, Joseph Dunphy admitted to making sexually explicit jokes about my sexual orientation, which constitute sexual harassment.
53. I was fully qualified to work in many of the roles at Athenahealth and my sexual orientation had no impact on my ability to do my job.
54. Athenahealth provided disability accommodations to other individuals, such as Thomas Horne, who did not identity as gay.
55. Athenahealth is an employer subject to the Civil Rights Act.
56. Athenahealth limited my opportunities based on my sexual orientation.

57. Where Joseph Dunphy's anti-gay remarks and sexual harassment were made directly in the context of my disability accommodation requests, Athenahealth limited my ability to seek accommodations pursuant to the ADA and thus violated the Civil Rights Act.
58. As a result of Athenahealth's actions, I have suffered and will continue to suffer both economic and non-economic harm.

## THIRD CLAIM FOR RELIEF
### Breach of Contract and Promissory Estoppel

59. For over a year I worked part-time (32 hours per week) and received compensation and benefits equivalent to that of a full-time employee. Athenahealth has accepted full responsibility for this oversight.
60. Working over a year with this compensation and benefits established an implied contract which a prudent person would expect to continue.
61. Athenahealth lacked the right to renegotiate the terms of my employment.
62. Athenahealth violated this implied contract by giving me an ultimatum – switch to a full-time schedule or face a reduction in compensation and benefits as well as the loss of opportunities to transfer to a different team.
63. Athenahealth coerced me into a written contract that prioritized work for other teams and gave TIES Team work the least priority. Most importantly, the contract stipulated that the extra hours would be non-call work.
64. Athenahealth violated this written contract by requiring me to do call work during most or all of the additional hours. During the Maine HRC investigation, Joseph Dunphy conceded that most of the extra hours were spent doing call work for the TIES Team.
65. Athenahealth expected me to complete full-time TIES Team work in addition to project work for other teams without providing me with any additional compensation. Athenahealth gave me access to the source code underlying athenaNet and Epocrates, and gave me partial access to the Epocrates Developer Team and its software tools, reaffirming the expectation that I would be able to transfer to another team.

66. Athenahealth promised the additional work would lead to a position with another team such as CCP Device Tech or Product Knowledge. Joseph Dunphy told the Maine HRC the intent of this work was to prepare me for a transfer to one of those teams.

67. Athenahealth violated this promise and, prior to my resignation, stated that a transfer to another team would not be an option.

68. Athenahealth used threats and false pretenses to coerce me into taking on additional job responsibilities without additional benefits or compensation.

69. Athenahealth breached my employment terms, an implied contract, breached a written contract, and violated a promise made to accommodate my disabilities with a transfer to another team. This forced my resignation, consistent with the Maine UIC's findings.

70. As a result of Athenahealth's actions, I have suffered and will continue to suffer both economic and non-economic harm.

**REQUEST FOR RELIEF**

WHEREFORE, I respectfully request that this Court enter Judgment in my favor and against Defendant and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant Athenahealth discriminated against me based on disability in violation of the Americans with Disabilities Act.

b. Declaratory relief, including but not limited to a declaration that Defendant Athenahealth discriminated against me based on sexual orientation in violation of the Civil Rights Act.

c. Appropriate injunctive relief, including but not limited to a prohibition that Athenahealth refrain from engaging in further discriminatory conduct of the types alleged in this Complaint;

d. Back pay in an amount to be determined at trial;

e. Compensatory and consequential damages, including for emotional distress against Defendant Athenahealth;

f. Punitive damages against Defendant Athenahealth;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

h. Legal fees and costs of this action; and

i. Any such further relief as the Court deems appropriate.

Respectfully submitted,

*Adam Flanders*